J-S24020-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RICHARD JARMON | |
| Appellant | No. 1787 EDA 2019 |

Appeal from the PCRA Order May 24, 2019
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0703901-2006

BEFORE:  BENDER, P.J.E., STABILE, J., and STRASSBURGER, J.[*]

MEMORANDUM BY STABILE, J.:          **FILED SEPTEMBER 14, 2020**

Appellant, Richard Jarmon, who is serving two consecutive life sentences for two first-degree murder[1] convictions, appeals *pro se* from an order denying his second petition for relief under the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546.  The PCRA court correctly held that Appellant's petition was untimely under the PCRA's one-year statute of limitations, and that it did not satisfy the newly discovered evidence exception to the statute.  Accordingly, we affirm.

The PCRA court summarized the evidence against Appellant as follows:

On May 23, 2005, at approximately 12:45 a.m., Eric Richardson was home in bed in his rented third floor room in a rooming house located at 27 E. Meehan Street in Philadelphia.  His girlfriend, now wife, Antoinette Haynes was with him.  Richardson allowed his

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2502(a).

friend Joseph El to stay in what was Richardson's father's rented room, as his father was not going to be home that night. At about 12:45 a.m. there was a knock at Richardson's door. Richardson partially opened the door and saw an individual he knew as Buck who was later identified as co-conspirator, David Mathias. Richardson dressed, went outside his door to the landing and spoke with Buck. Richardson testified that Buck asked him for change of a $5 bill. As they were talking, Richardson was able to see into his father's room. The television was on, and there was a male sitting on a plastic chair. El appeared to be laying on the floor. Richardson further testified that he went to his room to get 5 one dollar bills. When he went back into the hallway, Buck said, "Is you ready to go?" At that time, Richardson saw the man in the other room stand up. He recognized the man to be Appellant [Richard Jarmon], whom he knew as Boz, who was a friend of Buck. Things happened quickly after that. The Court found as fact that Buck reached under his shirt, pulled out a gun and began firing at Richardson. They struggled and eventually Richardson was able to flee down the stairs as he was being shot at and ran out of the building. Richardson also saw Appellant standing over El and fire straight down at him. Appellant also fired at Richardson. Richardson was struck five times and recovered from his injuries. El was not as lucky; he died at the scene.

On May 29, 2005, at about 4:40 a.m., Dominique Sutton was outside behind a building at 6415 Cliveden Street in Philadelphia. She had been doing drugs and drinking alcohol. She saw her best friend, Bruce Poles, walking on Musgrave Street alongside of the park. She then saw a silver Taurus drive up and approach Poles. Appellant was in the front passenger seat and Buck was in the back seat. Appellant and the driver got out. She heard an argument between Poles and Appellant and heard Poles say, "You don't have to do this." She then heard Appellant say, "I don't have to worry about you snitching. I'm going to get you out of the way." Appellant then repeatedly shot Boles, killing him. Appellant ran away as Buck and the driver fled in the car.

PCRA Court Opinion, 11/21/19, at 2-4 (with minor grammatical revisions).

Following a bench trial, the trial court found Appellant guilty of first-degree murder for each shooting and other offenses. Appellant filed a direct appeal. This Court affirmed on April 29, 2009, and our Supreme Court

- 2 -

subsequently denied Appellant's petition for allowance of appeal on February 5, 2010. Appellant filed a timely PCRA petition that the PCRA court denied. On February 5, 2014, this Court affirmed, and the Supreme Court subsequently denied Appellant's petition for allowance of appeal.

Next, Appellant filed a petition for a writ of *habeas corpus* in federal court, but the district court denied his petition, and the Third Circuit affirmed.

On January 23, 2018, Appellant filed his second PCRA petition *pro se*,[2] the petition presently under review, alleging he was entitled to relief based on an alleged newly discovered exculpatory witness to Joseph El's murder on May 23, 2005. Appellant attached a statement by the alleged witness, Lisa Kelly, to his PCRA petition. The PCRA court accurately described Kelly's statement as follows:

> Kelly states her residence now to be in Georgia. She stated that at the time of the "Meehan Street" killing (the May 23, 2005 killing of Joseph El) she also resided in the house. She was outside the house with a friend when she heard the shots. She saw a man running out of the house, limping. Another man came out of the

---

[2] The Rules of Criminal Procedure provide, "On a second or subsequent petition, when an unrepresented defendant satisfies the judge that the defendant is unable to afford or otherwise procure counsel, and an evidentiary hearing is required as provided in [Pa.R.Crim.P.] 908, the judge shall appoint counsel to represent the defendant." Pa.R.Crim.P. 904(D). Rule 904 further provides, "[t]he judge shall appoint counsel to represent a defendant whenever the interests of justice require it." Pa.R.Crim.P. 904(E). The record in this case makes clear that no evidentiary hearing was necessary, because for the reasons discussed below, Appellant's PCRA petition was patently untimely and did not satisfy any exception in the PCRA's statute of limitations. Nor did the interest of justice require the PCRA court to appoint counsel. Therefore, the PCRA court properly permitted Appellant to represent himself *pro se* and it was not required to appoint counsel under Rule 904(D) or (E).

- 3 -

house chasing the limping man and then another man came out of the house and jumped into a car. She later found out the limping man was "the guy who sold weed out of the house." (Presumably Richardson.) She stated she moved out of the house and moved elsewhere. She further stated after some time she heard Appellant had been arrested for the killing and "he was not none of the people who came out of that house that night cause if it was him I would have recognized him." She said she never got involved because she moved out of the neighborhood and was "on the run" because she had an open case.

PCRA Court Opinion, 11/21/19, at 5. The PCRA court also stated accurately:

Ms. Kelly's signature purports to be on the affidavit. Underneath her signature is the date 7-10-16. In a different handwriting appears to be the signature of the notary. Underneath the notary's signature is the date "7th Day of July 2017." There is no explanation as to why the notary signed the affidavit almost a year after Ms. Kelly did. Moreover, if Ms. Kelly signed the statement on July 10, 2016, the instant Petition, which was filed in January 2018, clearly is untimely. Even more confusing is a cover page from the detective agency, which also was attached to the petition. That cover page notes that a recorded statement was taken from Ms. Kelly on November 24, 2017. No transcript of that statement was attached to the petition.

*Id.* at 5 n.4.

On March 7, 2019, the PCRA court filed a notice of intent to dismiss Appellant's petition without a hearing. On May 25, 2019, the PCRA court dismissed Appellant's petition as untimely under the PCRA's statute of limitations. Appellant filed a timely notice of appeal *pro se*,[3] and both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

_____

[3] In response to a rule to show cause issued by this Court, Appellant submitted cash slips demonstrating that he mailed his appeal from prison on June 17, 2019. Thus, his appeal was timely under the prisoner mailbox rule.

Appellant raises two issues in this appeal:

I. Whether the PCRA Court erred and misapplied 42 Pa. C.S.A. § 9545(b)(1)(ii) by improperly conflating the timeliness of Appellant's claim with the merit of the claim?

II. Whether the PCRA Court erred and misapplied 42 Pa. C.S.A. § 9545 in requiring Appellant to go beyond the dictates of witness certifications to present his claim?

Appellant's Brief at 4.

Appellant has moved for relief only with respect to CP-51-CR-0703901-2006, the case relating to Joseph El's murder, but not with respect to CP-51-CR-0703911-2006, the case relating to Bruce Poles' murder. We must review whether the PCRA court had jurisdiction to entertain Appellant's petition relating to his conviction for El's murder. We conclude that it did not.

Under the PCRA, the petitioner must move for post-conviction relief within one year of the date the judgment of sentence becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment becomes final under the PCRA "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3). The

_____

*Commonwealth v. Jordan*, 182 A.3d 1046, 1048 (Pa. Super. 2018) (petition dated March 16, 2016, that was received in trial court on March 21, 2016 deemed filed on March 16, 2016 pursuant to prisoner mailbox rule); *Commonwealth v. Chambers*, 35 A.3d 34, 38 (Pa. Super. 2011) (prisoner mailbox rule provides that *pro se* prisoner's document is deemed filed on date he delivers it to prison authorities for mailing).

one-year limitation period does not apply, however, when the petitioner

pleads and proves that:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)—(iii).  In cases where claims arise under these

exceptions prior to December 24, 2017, the petition attempting to invoke one

of these exceptions "shall be filed within 60 days of the date the claim could

have been presented."  42 Pa.C.S.A. § 9545(b)(2).[4]

Importantly, the PCRA's time limitations are jurisdictional.

***Commonwealth v. Fahy***, 737 A.2d 214, 222 (Pa. 1999).  "[Jurisdictional

time] limitations are mandatory and interpreted literally; thus, a court has no

authority to extend filing periods except as the statute permits."  ***Id.***  "If the

petition is determined to be untimely, and no exception has been pled and

---

[4] In 2018, the legislature amended Section 9545(b)(2) to extend its limitation period from sixty days to one year when claims arise under any of these exceptions on or after December 24, 2017.  This amendment does not apply here, since the alleged newly discovered evidence in this case, Kelly's affidavit, was obtained in July 2016.

- 6 -

proven, the petition must be dismissed without a hearing because Pennsylvania courts are without jurisdiction to consider the merits of the petition." *Commonwealth v. Perrin*, 947 A.2d 1284, 1285 (Pa. Super. 2008).

Here, Appellant's judgment of sentence became final in May 2010, ninety days after our Supreme Court denied his petition for allowance of appeal. His present petition, filed in 2018, is facially untimely. Thus, for this Court to have jurisdiction to review his petition on the merits, he must prove that he meets one or more of the exceptions in Section 9545(b).

Appellant contends that his present petition is timely under the newly discovered evidence exception to the statute of limitations, Section 9545(b)(1)(ii). The PCRA court correctly held that Appellant failed to plead facts in his PCRA petition that, if proved, satisfy this exception.

A petitioner satisfies the newly discovered facts exception when the petitioner pleads and proves that "(1) the facts upon which the claim [is] predicated were unknown and (2) could not have been ascertained by the exercise of due diligence." *Commonwealth v. Hart*, 199 A.3d 475, 481 (Pa. Super. 2018). Due diligence "requires reasonable efforts by a petitioner, based on the particular circumstances, to uncover facts that may support a claim for collateral relief," but does not require "perfect vigilance [or] punctilious care." *Commonwealth v. Selenski*, 994 A.2d 1083, 1089 (Pa. 2010).

In this case, Appellant failed to show why he did not find the alleged exculpatory witness, Kelly, any earlier through the exercise of due diligence. While he claims to have hired an investigation team, he did not do so until 2016, nine years after his trial, and after his direct appeal, first PCRA petition, and federal *habeas corpus* petition had proven unsuccessful. Since he offers no reason for this delay, his petition did not satisfy the newly discovered evidence exception to the PCRA's statute of limitations. **Commonwealth v. Priovolos**, 746 A.2d 621, 626 (Pa. Super. 2000) (defendant failed to satisfy newly-discovered evidence exception where he used private investigator to uncover purportedly exculpatory evidence almost a decade after trial; "no attempt to explain why the information contained in these statements could not, with the exercise of due diligence, have been obtained much earlier"); **Commonwealth v. Gray**, 2020 WL 602336, *5 (Pa. Super. 2020) (unpublished memorandum) (defendant convicted of first degree murder in 1995 filed PCRA petition in 2015 alleging newly discovered exculpatory evidence; defendant failed to prove exercise of due diligence due to failure to explain why he could not have discovered exculpatory witness earlier through use of private investigator).

Appellant also failed to demonstrate due diligence because he failed to move for PCRA relief within sixty days after Kelly signed the affidavit. Appellant's investigation team acquired Kelly's signed affidavit on July 10, 2016, but he did not file his petition until a year and a half later, on January

23, 2018. Appellant attempts to excuse this delay by claiming that he did not learn about Kelly until after his investigation team had completed its investigation, and that he cannot be faulted for not contacting his team during their investigation to find out if they had obtained useful information. We disagree. The due diligence requirement obligated Appellant to monitor his investigation team's progress. Had he done so even occasionally, he could have learned of the alleged witness much earlier than he did. Since he failed to do so, his petition is untimely. *Fahy*, 737 A.2d at 219 (assuming petitioner's prison guards coerced him into waiving his rights to appellate review and collateral relief, sixty day period for petitioner to seek relief under government interference exception to PCRA's one-year statute of limitations began running, at the latest, when he informed his counsel about guards' conduct; since he filed PCRA petition beyond sixty day window, petition was untimely).

Because Appellant's petition is untimely and not subject to a statutory exception to the PCRA's time bar, the PCRA court lacked jurisdiction. We therefore affirm the order denying relief.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/14/20