J-S20035-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARQUIS THOMAS | : | |
| | : | |
| Appellant | : | No. 2555 EDA 2022 |

Appeal from the PCRA Order Entered September 28, 2022
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0001721-2011

BEFORE:   DUBOW, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED OCTOBER 20, 2023**

Appellant, Marquis Thomas, appeals from the order of the Court of
Common Pleas of Delaware County that dismissed his second petition filed
under the Post Conviction Relief Act (PCRA)[1] without a hearing.  For the
reasons set forth below, we vacate the dismissal of Appellant's PCRA petition
and remand the case to the PCRA court for an evidentiary hearing.

Appellant was convicted on February 29, 2012, of robbery and
conspiracy for participating with another individual, Corey Johnson, in a May
18, 2010 robbery of Keith Edmonds (Victim) in Victim's home.
***Commonwealth v. Thomas (Thomas I),*** No. 2680 EDA 2012, slip op. at 1-

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1]  42 Pa.C.S. §§ 9541–9546.

2, 7-8 (Pa. Super. July 15, 2013) (unpublished memorandum); N.T. Trial, 2/29/12, at 125-30. Victim died of a cause unrelated to the robbery before trial and the only evidence introduced at trial that implicated Appellant in the robbery was the testimony of two other residents of the house, Keisha Anderson and Craig Graham. *Id.*, No. 2680 EDA 2012, slip op. at 7-8 & n.2.

Graham testified that at about 10:00 p.m. on May 18, 2010, he was in the kitchen of the house, that the door opened, that he later heard a loud smack sound and Anderson ran into the kitchen, and that he went toward the living room, but Appellant, who is Johnson's cousin, stopped him. N.T. Trial, 2/28/12, at 154-66, 188-89, 196, 224. Graham testified that Appellant had his hand in his pocket, that he did not see a gun on Appellant, but that there was a bulge in Appellant's pocket that looked like the shape of a gun, and that Appellant told Graham to "chill" and that Graham had "nothing to do with it." *Id.* at 165-69, 170, 190-91, 202, 219-20, 224. Graham testified that after Anderson ran into the kitchen, he saw Johnson hitting Victim in the head with a gun, heard Johnson demand that Victim tell him where the money was, and saw Victim give Johnson money. *Id.* at 170-77, 191-92, 194-95, 198-99, 228-29. He testified that after Victim gave Johnson money, Appellant went to the room where Johnson was, and Johnson and Appellant left the house together. *Id.* at 199-200.

At trial, Anderson testified that Johnson and Appellant came to the house together three times on May 18, 2010 and that when they came to the

- 2 -

house the third time, Appellant stood near Anderson and said to her, "don't worry, baby girl, it's going to be all right" and "I got a son for you." N.T. Trial, 2/28/12, at 248, 250-58. She testified that she then turned and saw Johnson pointing a gun at Victim's head and that she heard Johnson asking Victim, "where it's at," and saying to Victim, "give it up and that it's over for you." *Id.* at 258-60. Anderson testified that when Victim said that he had nothing, Johnson repeatedly hit Victim in the head with the gun. *Id.* at 260, 264-65. Anderson testified that she ran into the kitchen, that Appellant followed her to the kitchen, that he stood at the entrance of the kitchen with his right hand in his pocket and said that she and Graham were not leaving the kitchen, and that Appellant also asked her, "where the stuff at," and said, "I know you know where it's at you the girlfriend." *Id.* at 265-67, 273-74, 290-92. Anderson testified that while she and Graham were in the kitchen, she later saw Victim give Johnson money from his pocket and saw Johnson hit Victim one more time with the gun, that Appellant then went to Johnson and went through Victim's wallet, and that Appellant and Johnson left together. *Id.* at 268-69, 290-91. She testified that after Appellant and Johnson left, she called an ambulance to take Victim to the hospital. *Id.* at 270.

On July 17, 2012, Appellant was sentenced as a repeat offender under 42 Pa.C.S. § 9714 to 25 to 50 years' incarceration, followed by a 15-year term of probation. Sentencing Order. Appellant filed a timely direct appeal and this Court affirmed Appellant's judgment of sentence on July 15, 2013.

*Thomas I,* No. 2680 EDA 2012, slip op. at 1, 13.  Appellant did not file a petition for allowance of appeal to the Pennsylvania Supreme Court.

On May 26, 2016, Appellant filed a counseled first PCRA petition asserting claims of ineffectiveness of trial counsel with respect to a jury instruction, testimony concerning the fact that Victim was deceased, and advice concerning a plea offer.  2016 PCRA Petition at 2-4.  On August 17, 2016, the PCRA court dismissed that PCRA petition without a hearing.  PCRA Court Order, 8/17/16.  This Court affirmed the dismissal of Appellant's first PCRA petition on August 17, 2017, on the ground that it was untimely, *Commonwealth v. Thomas (Thomas II),* No. 2958 EDA 2016, slip op. at 1, 4-8 (Pa. Super. August 17, 2017) (unpublished memorandum), and Appellant did not seek further review.

On September 7, 2021, Appellant filed the instant second PCRA petition. In this PCRA petition, Appellant sought relief based on a handwritten May 5, 2021 statement signed by Anderson recanting her trial testimony.  2021 PCRA Petition at 2-10 & Appendix A thereto. In this statement, Anderson asserts that she testified falsely at Appellant's trial because she was threatened by the police and the prosecutor told her that she would get full custody of her daughter if she cooperated.  *Id.* Appendix at 1, 3.  In the document, Anderson further states, contrary to her trial testimony, that Appellant did not come to the house with Johnson and arrived after Johnson was already with Victim, that she saw Appellant's eyes "get big" when Johnson pointed a gun at Victim,

- 4 -

that Appellant only tried to calm her and Graham down and did not ask her anything, that Appellant's hands were not in his pockets, that Appellant never went over to where Johnson and Victim were, and that Appellant did not go through Victim's wallet. *Id.* Appendix at 1-2.

On July 12, 2022, the PCRA court issued a notice pursuant to Pa.R.Crim.P. 907 of its intent to dismiss this PCRA petition without a hearing on the grounds that the PCRA petition was time-barred and that it was without merit because Anderson's statement did not satisfy the requirements for relief based on after-discovered evidence. Rule 907 Notice, 7/12/22, at 2-4. Appellant filed a response to the Rule 907 notice in which he argued that the PCRA petition was timely under Section 9545(b)(1)(ii) of the PCRA, 42 Pa.C.S. § 9545(b)(1)(ii), because Anderson's recantation was newly discovered evidence that was not available before 2021 and that the PCRA court could not reject his claim on the merits without an evidentiary hearing. On September 28, 2022, the PCRA court dismissed the PCRA petition without a hearing. PCRA Court Order, 9/28/22. This timely appeal followed.

The issues before the Court in this appeal are whether the PCRA court erred in dismissing Appellant's PCRA petition on the grounds that it was untimely and did not assert a meritorious claim for PCRA relief without holding an evidentiary hearing. A PCRA petitioner does not have an absolute right to a hearing on his claims for relief. *Commonwealth v. Grayson*, 212 A.3d 1047, 1054 (Pa. Super. 2019); *Commonwealth v. Wah*, 42 A.3d 335, 338

(Pa. Super. 2012). A PCRA court may properly dismiss a PCRA claim without a hearing if there is no genuine dispute with respect to the facts on which the claim is based and those facts preclude relief or if it is clear from the record that the claim is patently without merit. Pa.R.Crim.P. 907; **Commonwealth v. D. Williams**, 244 A.3d 1281, 1287 (Pa. Super. 2021); **Wah**, 42 A.3d at 338. The PCRA court, however, must hold a hearing where the defendant's PCRA claim cannot be rejected without resolving disputed issues of material fact that have not been addressed at a prior evidentiary hearing in the case. Pa.R.Crim.P. 908(A)(2); **Commonwealth v. Santiago**, 855 A.2d 682, 691 (Pa. 2004); **Grayson**, 212 A.3d at 1054-55. It is this Court's responsibility on appeal to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without conducting an evidentiary hearing. **D. Williams**, 244 A.3d at 1287; **Grayson**, 212 A.3d at 1054; **Wah**, 42 A.3d at 338.

The dismissal without a hearing on untimeliness grounds cannot be sustained because Appellant's PCRA petition set forth a sufficient basis to conclude that it was filed within the PCRA's time limits. The PCRA provides that

> [a]ny petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>
> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the

- 6 -

claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1). These three exceptions can apply only if Appellant filed the PCRA petition "within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2). The PCRA's time limit is jurisdictional, and a court may not ignore it and reach the merits of an untimely claim for PCRA relief. ***Commonwealth v. Fahy***, 737 A.2d 214, 223 (Pa. 1999); ***Commonwealth v. Diggs***, 220 A.3d 1112, 1117 (Pa. Super. 2019); ***Commonwealth v. Pew***, 189 A.3d 486, 488 (Pa. Super. 2018).

Appellant's judgment of sentence became final on August 14, 2013, upon the expiration of the 30-day period to file a petition for allowance of appeal following this Court's affirmance of Appellant's judgment of sentence. 42 Pa.C.S.A. § 9545(b)(3); Pa.R.A.P. 1113(a). The instant PCRA petition, filed more than eight years later, is facially untimely and would therefore be time-barred unless Appellant satisfies one of the three exceptions set forth in Section 9545(b)(1)(i)-(iii).

Appellant's PCRA petition, however, pleads sufficient facts to satisfy Section 9545(b)(1)(ii)'s exception for newly discovered facts. The claim for

- 7 -

relief that the petition asserts is based on a newly discovered fact, a statement by Anderson recanting her trial testimony. 2021 PCRA Petition at 2-10 & Appendix A. That statement was given on May 5, 2021, less than one year before Appellant filed the PCRA petition. *Id.* Appendix A. Absent evidence that the Anderson had previously admitted that her trial testimony was not truthful or that Appellant had reason to know prior to September 7, 2020, one year before he filed the PCRA petition, that she would admit to testifying falsely, the May 5, 2021 recantation is sufficient to satisfy the PCRA's timeliness exception for newly discovered facts. *Diggs*, 220 A.3d at 1116, 1118 (Section 9545(b)(1)(ii) newly discovered fact exception applied to PCRA claim that witness recanted testimony where witness signed affidavit recanting testimony one month before defendant filed PCRA petition asserting a claim based on that recantation); *Commonwealth v. Medina*, 92 A.3d 1210, 1214, 1216-18 (Pa. Super. 2014) (*en banc*), *appeal dismissed as improvidently granted*, 140 A.3d 675 (Pa. 2016) (PCRA claim that witness recanted testimony was timely under Section 9545(b)(1)(ii) where witness, less than 60 days before defendant filed PCRA petition, revealed to defendant that he lied at trial); *Commonwealth v. Parks*, 2031 EDA 2021, slip op. at 3, 7-12 (Pa. Super. May 16, 2023) (unpublished memorandum) (reversing dismissal without a hearing of PCRA petition that was based on recantation shortly before the PCRA petition was filed). There is nothing in the record from which it can be concluded that Anderson recanted her trial testimony

more than a year before Appellant filed the PCRA petition on September 7, 2021, that Anderson ever indicated to anyone before September 7, 2020 that she had testified falsely at trial, or that Appellant could have learned such information before that date.

Notwithstanding these facts, the Commonwealth argues that Appellant did not satisfy the timeliness exception for newly discovered facts because he did not show that he could not have learned of the new evidence earlier if he had acted with diligence. The PCRA court did not address the issue of due diligence, but held that Section 9545(b)(1)(ii) did not apply because it concluded that Anderson's statement did not satisfy the requirements for granting relief based on after-discovered evidence. PCRA Court Opinion, 1/20/23, at 6-10 & n.2. Neither the Commonwealth's argument nor the PCRA court's reasoning is a legally valid basis for dismissing Appellant's PCRA petition as untimely without a hearing.

To satisfy Section 9545(b)(1)(ii)'s timeliness exception, the defendant must show that the new facts on which his PCRA petition is based could not have been discovered earlier if he had exercised due diligence. 42 Pa.C.S. § 9545(b)(1)(ii); **D. Williams**, 244 A.3d at 1288; **Diggs**, 220 A.3d at 1117; **Commonwealth v. Sanchez**, 204 A.3d 524, 526 (Pa. Super. 2019). The mere assertion that the defendant only recently learned of documents, facts or witnesses that were in existence and capable of being discovered long before the PCRA petition was filed is therefore not sufficient to make a PCRA

- 9 -

petition timely where there is no explanation why the defendant could not have learned that information earlier. ***Sanchez***, 204 A.3d at 526-27; ***Pew***, 189 A.3d at 489-90; ***Commonwealth v. Priovolos***, 746 A.2d 621, 625-26 (Pa. Super. 2000). Here, however, the new facts are a change in a witness's testimony that occurred sometime after Appellant's trial, not a pre-existing document or the identity of witness that could have been discovered by exercising diligence. It cannot be concluded such a change in testimony could have been discovered earlier through the exercise of due diligence where there is no evidence that the witness gave any indication at any earlier date that the prior testimony was false or that the defendant had any prior reason to believe that the witness would admit to having lied at trial. ***Medina***, 92 A.3d at 1216-18; ***see also Commonwealth v. Davis***, 86 A.3d 883, 890-91 (Pa. Super. 2014) (due diligence does not require that the defendant to assume that the Commonwealth has caused a witness to commit perjury).

The only factual basis that the Commonwealth asserts for its claim that Appellant failed to exercise due diligence is that Appellant knew at trial that Anderson had attended the preliminary hearing testimony of the other witness, Graham, and contended that this was a violation of a sequestration order. Appellee's Brief at 11-12; N.T. Trial, 2/28/12, at 87-106. That, however, shows only that Appellant had reason to know that Anderson's recollection could have been improperly influenced by Graham's testimony, not that she testified falsely that Appellant did things that she knew that he

did not do or that she would admit that her testimony was false. Appellant's knowledge of a violation of the sequestration order would therefore only affect the timeliness of one part of Appellant's PCRA petition, the claim that he is entitled to relief based on prosecutorial misconduct in directing Anderson to violate a sequestration order, 2021 PCRA Petition ¶14, and has no effect on the timeliness of Appellant's claims based on Anderson's statement concerning what happened at the time of the robbery. It therefore cannot support the PCRA court's dismissal of the entire PCRA petition as untimely without a hearing.

The PCRA court's reason for holding that Appellant did not satisfy Section 9545(b)(1)(ii)'s timeliness exception is simply erroneous. The law is clear that Section 9545(b)(1)(ii) does not require that a PCRA petitioner allege and prove a valid after-discovered evidence claim. *Commonwealth v. Burton*, 158 A.3d 618, 628-29 (Pa. 2017); *Commonwealth v. Bennett*, 930 A.2d 1264, 1271-72 (Pa. 2007); *Commonwealth v. R. Williams*, 215 A.3d 1019, 1024 n.3 (Pa. Super. 2019). Rather, whether the elements of an after-discovered evidence claim are satisfied goes to the merits, whether the defendant is entitled to PCRA relief, and not to the timeliness of a PCRA petition. *Burton*, 158 A.3d at 628-29; *R. Williams*, 215 A.3d at 1024 n.3.

Because there is no basis in the record to find that it is undisputed that Appellant could have learned of Anderson's change in testimony more than a year before he filed the PCRA petition, the PCRA court's summary dismissal of

the PCRA petition as untimely was improper. A hearing must therefore be held on the issues of whether Appellant could have learned of Anderson's recantation before September 7, 2020 and Appellant's due diligence in seeking that information before the PCRA petition can be dismissed on untimeliness grounds. **D. Williams**, 244 A.3d at 1288-89; **Parks**, 2031 EDA 2021, slip op. at 7-12.

The PCRA court alternatively held even if the PCRA petition was timely, dismissal was proper on the ground that Appellant's claim for relief lacked merit. PCRA Court Opinion, 1/20/23, at 11-14. This likewise is not a sufficient basis on which the dismissal without a hearing can be sustained.

To prevail on an after-discovered evidence claim the defendant must prove that (1) the new evidence could not have been obtained prior to the end of his trial through reasonable diligence; (2) the new evidence is not merely corroborative or cumulative of evidence that was admitted at trial; (3) the new evidence is not being used solely to impeach credibility; and (4) the new evidence would likely result in a different verdict. **Commonwealth v. Small**, 189 A.3d 961, 972 (Pa. 2018); **Commonwealth v. Crumbley**, 270 A.3d 1171, 1178 (Pa. Super. 2022); **R. Williams**, 215 A.3d at 1024. All four of these requirements must be proved; if the defendant fails to establish any one of these, the after-discovered evidence claim fails. **Small**, 189 A.3d at 972; **Crumbley**, 270 A.3d at 1178. The PCRA court held that Anderson's statement did not satisfy the fourth requirement that it would have likely

resulted in a different verdict, because it was not credible, because it did not exculpate Appellant, and because Graham's testimony was sufficient to prove Appellant's guilt. PCRA Court Opinion, 1/20/23, at 6-14. We do not agree that these determinations can be made without a hearing at which the PCRA can evaluate the credibility of Anderson's recantation and the new testimony that she claims that she would give.

Recantation evidence is generally an exceedingly unreliable type of evidence, particularly when, as here, it constitutes an admission of perjury. *Commonwealth v. D'Amato*, 856 A.2d 806, 825 (Pa. 2004); *Commonwealth v. McCracken*, 659 A.2d 541, 545 (Pa. 1995); *Commonwealth v. Loner*, 836 A.2d 125, 135 (Pa. Super. 2003) (*en banc*). That fact, however, does not make all such recantations *ipso facto* incredible. *Commonwealth v. R.L. Williams*, 732 A.2d 1167, 1180 (Pa. 1999); *McCracken*, 659 A.2d at 545-52 (upholding grant of new trial based on witness recantation where trial court heard recanting witness's testimony and found recantation credible); *Medina*, 92 A.3d at 1218-21 (affirming grant of new trial based on witness recantation where PCRA court heard recanting witness's testimony and found recantation credible). A PCRA court therefore cannot automatically reject a recantation as incredible and must assess its credibility based on factors beyond the mere fact that it contradicts the witness's prior testimony before it can deny relief on the ground that the claim based on the recantation lacks merit. *D'Amato*, 856 A.2d at 825-26; *R.L.*

*Williams*, 732 A.2d at 1180-81. *Loner*, relied on by the PCRA court and the Commonwealth, is not to the contrary. In *Loner*, the PCRA court rejected the victim's recantation of her trial testimony after observing her testimony concerning the recantation at a PCRA hearing. 836 A.2d at 139-41.

Here, the PCRA court did not point to anything in the content of Anderson's May 5, 2021 statement that is facially impossible or that is incredible for any reason other than the fact that it differs from her trial testimony. Rather, the sole basis that the PCRA court articulated for finding Anderson's statement incredible was that it was a recantation and involved an admission of perjury. PCRA Court Opinion, 1/20/23, at 7-8, 12-13. Moreover, the PCRA court not only did not have the benefit of observing Anderson and judging the credibility of her recantation at a PCRA hearing, it had no opportunity to observe her trial testimony, as the PCRA judge did not preside over Appellant's trial. Under these circumstances, it was error for the PCRA court to conclude that Anderson's recantation was not credible without holding a hearing. *Parks*, 2031 EDA 2021, slip op. at 10-12; *Commonwealth v. Smith*, 436 EDA 2020, slip op. at 12-15 (Pa. Super. July 30, 2021) (unpublished memorandum).

Absent an evaluation of Anderson's credibility after hearing her testimony, no determination can be made that her new testimony would not be likely to result in a different verdict. While Anderson's statement would not change the evidence that Appellant was present at the time of the robbery,

it would negate much of the evidence that Appellant was acting in conspiracy with Johnson when Johnson robbed Victim. Anderson's testimony at trial was not merely that Appellant was at the house at the time, but that he arrived with Johnson, that Appellant asked her while the robbery was going on for information about what Johnson was seeking, that Appellant went through Victim's wallet, and that Appellant left the house with Johnson. N.T. Trial, 2/28/12, at 248, 250-55, 265-66, 269, 273, 290-91. Anderson's statement affirmatively denies that Appellant came into the house with Johnson and asserts that Appellant looked surprised when Johnson pulled the gun on Victim, denies that Appellant asked her or Graham for anything, denies that Appellant went through Victim's wallet, and states that she did not see whether Appellant left the house with Johnson. 2021 PCRA Petition Appendix A at 1-3.

Graham also testified at trial concerning Appellant's actions. The PCRA court, however, could not evaluate Graham's demeanor because, as noted above, it did not preside over Appellant's trial, and the cold record that it evaluated does not support the conclusion that Anderson's recantation and new testimony, if credible, would have no effect on the outcome of Appellant's trial. Graham's testimony on whether Appellant arrived with Johnson appears from the trial transcript to have been equivocal, asserting both that he saw Appellant and Johnson enter together and also that he merely heard the door open while he was in the kitchen. N.T. Trial, 2/28/12, at 157-64, 185-88,

221-23. Graham's testimony concerning what Appellant said, *id.* at 165-66, 170, 190-91, 224-25, was less incriminating than Anderson's trial testimony. Moreover, his testimony that Appellant arrived with Johnson and his assertion on cross-examination, contrary to his testimony on direct examination, that Appellant asked Anderson "where is it at," *id.* at 170, 240, are both directly contradicted by Anderson's statement. 2021 PCRA Petition Appendix A at 1-2. In addition, Graham's incriminating testimony that Appellant had his hand in his pocket where there was a bulge that looked like a gun, N.T. Trial, 2/28/12, at 165-69, 191, 202, 219, is contradicted by Anderson's statement in her recantation that Appellant did not have either of his hands in a pocket. 2021 PCRA Petition Appendix A at 2. Notably, this Court concluded in upholding the sufficiency of the evidence on direct appeal that "the coalescence of" both Graham's and Anderson's testimony established Appellant's guilt. *Thomas I,* No. 2680 EDA 2012, slip op. at 8. Although the PCRA court may well conclude that Anderson's recantation is not credible or that it would not likely result in a different verdict after it has heard her testimony and observed her demeanor at an evidentiary hearing, it cannot make those determinations solely on a cold record without the benefit of a hearing. *Smith*, 436 EDA 2020, slip op. at 12-15.

For the foregoing reasons, the PCRA court erred in concluding that there were no genuine issues of material fact and in determining that the PCRA petition was untimely and lacked merit without conducting an evidentiary

hearing. We therefore vacate the PCRA court's order and remand this case with instructions that the PCRA court hold a hearing on the timeliness and merits of Appellant's claim for PCRA relief based on witness Anderson's recantation of her trial testimony.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judge Kunselman joins the memorandum.

Judge Dubow files a Dissenting Statement.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/20/2023